# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

United States of America,

v.                                          Case No. 1:22-cr-362-MLB
                                                        1:23-cr-131-MLB

Brittany Hudson,

                      Defendant.

_____/

## ORDER

    The United States has charged Defendant Britany Hudson in two separate but related criminal cases: 1:22-cr-362 and 1:23-cr-131. The Court enters this Order to adopt a Report & Recommendation the Magistrate Judge issued in both cases (2022 Case, Dkt. 229; 2023 Case, Dkt. 332), dismiss the 2022 case without prejudice, and address several outstanding motions in the 2023 case.

## I.    Background Facts

    The 2022 case arose out of an agreement between the United States and Defendant Hudson in which Defendant Hudson attended a proffer session with the United States and signed a waiver of indictment allowing the United States to charge her with a felony offense by way of

criminal information.  (2022 Case, Dkts. 1, 2, 3-1, 6 at 2; 2023 Case, Dkt. 225-1.)  In that information, the United States alleged Defendant Hudson and others defrauded Amazon by causing Amazon to pay fraudulent vendor invoices totaling $9.4 million.  (2022 Case, Dkt. 1.)  Defendant Hudson allowed the United States to file that charging document in anticipation of pleading guilty to it rather than being indicted on broader charges.  (2023 Case, Dkt. 133 at 13.)  The 2022 case was pending before (former) Chief Judge Batten.  At Defendant Hudson's arraignment a Magistrate Judge Vineyard—with the United States's recommendation—granted her bond.  (2022 Case, Dkt. 77 at 11-13.) Defendant Hudson did not immediately enter a plea to the information because she applied for deferred prosecution in an alternative resolution process known as "ATL Court."  (2023 Case, Dkt. 133 at 14.)

On January 24, 2023, the United States learned Defendant Hudson (and one of her co-conspirators) committed new crimes while on bond. (2022 Case, Dkt. 6 at 3-5.)  Those crimes included both forging Judge Batten's signature on falsified court documents to make it appear the criminal information against her had been dismissed and submitting falsified financial records in a business transaction.  (*Id.*)  The United

States moved to revoke Defendant Hudson's bond, and the Magistrate Judge granted that motion, ordering pretrial detention. (2022 Case, Dkts. 6, 13.) ATL Court denied her application for deferred resolution days later. (Case 1:22-ax-11, Dkt. 2.)

In April 2023, the United States obtained an indictment in the 2023 case, charging Defendant Hudson and several codefendants with conspiring to defraud Amazon (as also alleged in the 2022 case), several substantive charges arising from that fraudulent activity, and several fraud charges arising from the activity involving the forgery of Judge Batten's signature. (2023 Case, Dkt. 1.) On June 20, 2023, the United States obtained a superseding indictment to add charges against two other alleged conspirators in the Amazon fraud. (2023 Case, Dkt. 28.)

That same day, Defendant Hudson filed separate motions to dismiss with prejudice the 2022 information and the 2023 superseding indictment for alleged violations of her right to a speedy trial. (2022 Case, Dkts. 31, 60; 2023 Case, Dkts. 22, 141.) At the arraignment for the superseding indictment on June 27, 2023, the United States explained it indicted Defendant Hudson in the 2023 case after she refused to plead guilty to the more narrow charges included in the 2022 criminal

information.  (2023 Case, Dkt. 133 at 14-16.)  The United States also explained it intended to dismiss the 2022 case without prejudice.  (*Id.*) The United States acknowledged Defendant Hudson's motion to dismiss with prejudice and explained that, if Defendant Hudson agreed to dismissal without prejudice, the United States would effectuate that dismissal immediately but that, if Defendant Hudson continued to insist on dismissal with prejudice, the United States would want to brief the issue.  (*Id.* at 15.)  She insisted, and the United States filed its response. (2022 Case, Dkt. 136; 2023 Case, Dkt. 231.)

Both parties agreed to dismissal of the 2022 information—arguing only about whether that dismissal should be with or without prejudice. The parties also dispute whether the 2023 superseding indictment should be dismissed.  The Magistrate Judge issued a Report & Recommendation saying this Court should dismiss without prejudice the 2022 information under the Speedy Trial Act and deny defendant's motion to dismiss the first superseding indictment.  (2023 Case, Dkt. 332 at 22; 2022 Case, Dkt.

4

229.)  Defendant Hudson filed objections, albeit late.  (2023 Case, Dkt. 360; 2022 Case, Dkt. 246.) [1]

## II.    Standard of Review

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject, or modify a magistrate judge's Report & recommendation.  28 U.S.C. § 636(b)(1); Fed.

---

[1]While consideration of the Magistrate Judge's Report & Recommendation was pending before this Court, the United States filed a second superseding indictment in the 2023 case to remove certain counts, add at least two substantive counts, and make other non-substantive changes in anticipation of trial.  (2023 Case, Dkt. 341.)  At a hearing on October 21, 2025, the Court explained the second superseding indictment potentially moots her motion to dismiss the first superseding indictment and the Court would continue the pending trial (then set for November 10, 2025) if she wanted so she could prepare for trial on the new indictment (including consideration of any appropriate pretrial motions).  Defendant Hudson said she did not want a continuance.  The Court notified Defendant Hudson that—in the light of her pro se status and the upcoming trial—it would issue its order on the Report & Recommendation but she could still raise claims attacking the second superseding indictment.  At a subsequent pretrial conference, Defendant Hudson requested (and the Court granted) a short continuance of the trial so she could file pretrial motions regarding the second superseding indictment.  The Court—also at Defendant Hudson's request—ordered that her outstanding motions (including those at issue here and any others pending) would be deemed to apply to the second superseding indictment so Defendant Hudson (and the Court) would not have to redo any of their prior work or further delay her trial.  In that way, Defendant Hudson could focus her attention on pretrial motions specific to changes in the second superseding indictment.

R. Crim. P. 59; *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir. 1982) (per curiam). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The district judge should "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (citation omitted). For those findings and recommendations to which a party has not asserted objections, the court must conduct a plain error review of the record. *See United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir. 1983). Parties filing objections to a magistrate judge's recommendation must specifically identify those findings to which they object. *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir. 1988). "Frivolous, conclusive, or general objections need not be considered by the district court." *Id.* "A district court has discretion to decline to consider a party's argument when that argument was not first presented to the magistrate judge." *See United States v. Russell,* 2023 WL 2062592, at *8 (11th Cir. Feb. 17, 2023).

## III.  Discussion

Both the Sixth Amendment to the United States Constitution and the Speedy Trial Act protect a defendant's right to a speedy trial.  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  A court must dismiss any indictment if it finds a violation of the defendant's constitutional right to a speedy trial.  *United States v. Villarreal*, 613 F.3d 1344, 1349 (11th Cir. 2010).  To determine whether a pretrial delay violates a defendant's right to a speedy trial a court considers four factors enunciated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514 (1972).  The so-called *Barker* factors include (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his or her right to a speedy trial, and (4) the actual prejudice borne by the defendant.  *Id.* at 530.

The Speedy Trial Act requires a Court to begin a defendant's trial within seventy days from the filing date of the indictment or information or from the date the defendant appears before a judicial officer, whichever is later.  *See* 18 U.S.C. § 3161(c)(1).  It allows for the exclusion

7

of time for several reasons, including delay resulting from a continuance granted at a defendant's request, delay resulting from consideration of pretrial motions, and delay (not to exceed thirty days) when a proceeding is under advisement by the court. *Id*. at § 3161(h)(1). If the United States violates the Speedy Trail Act, a court "shall" dismiss the indictment or information "on motion of the defendant." *Id*. at § 3162(a)(2). In determining whether to dismiss with or without prejudice, a court must consider—among other things—"(1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a prosecution on the administration of this chapter and on the administration of justice." *Id*. When "the defendant is charged with a serious crime, the delay was minor, and the government did not actively seek delay, dismissal should be without prejudice." *United States v. Jones*, 601 F.3d 1247, 1257.

## A.    Dismissal Without Prudice of the 2022 Information

The United States concedes pretrial delay in the 2022 case violated the Speedy Trial Act and that the information in that case should be dismissed. (2022 Case, Dkt. 136 at 6.) The Magistrate Judge thus did not discuss the *Barker* factors or Defendant Hudson's claim in the 2022

case under the Sixth Amendment. Instead, the Magistrate Judge considered whether dismissal under the Speedy Trial Act should be with or without prejudice. As part of that, the Magistrate Judge rejected as unfounded Defendant Hudson's contention that the United States "deliberately" delayed trial on the information to "coerce" Defendant Hudson into pleading guilty. (*Id.* at 17.) The Magistrate Judge also concluded the factors set forth in the Speedy Trial Act warrant dismissal without prejudice. As part her analysis, the Magistrate Judge noted Defendant Hudson is charged with a "multimillion-dollar fraud scheme" that involved brazen falsification of vendor invoices. *Id.* The Magistrate Judge also concluded the United States had established "affirmative justification" for the delay by showing the parties anticipated resolving the 2022 case via a plea but the "anticipated resolution" was delayed by Defendant Hudson's efforts to resolve that matter through the ATL Court and her subsequent arrest on the new charges. (*Id.* at 19.) In the light of the seriousness of the charges, Defendant Hudson's efforts to delay resolution of the charges to which she had expected to plead guilty before ultimately decided not to do so, and the lack of any misconduct or negligence by the United States, the Magistrate Judge concluded

dismissal with prejudice would undermine the administration of justice. (*Id.* at 21.) As part of that, the Court noted that the delay was "just more than two weeks" and Defendant failed to show the delay adversely affected her ability to defend herself in any way. (*Id.* at 21-22.)[2]

---

[2] In a footnote, the Magistrate Judge refused to consider as untimely another motion to dismiss the indictment that Defendant Hudson filed. (2023 Case, Dkt. 332 n. 1 (citing 2023 Case, Dkt. 321).) Defendant Hudson argued the United States failed to establish jurisdiction, standing and venue; the indictment did not adequately allege the interstate nature of the alleged wire transactions, the indictment failed to allege the elements of wire fraud and money laundering, the United States failed to establish the interstate nature of the wire transactions before the grand jury, and the United States used improper leading questions before the grand jury. (2023 Case, Dkt. 321 at 2-12.) Defendant Hudson objects to the Magistrate Judge's refusal to consider that motion, arguing the Court must always be mindful of its jurisdiction. (Dkt. 360 at 10.) The Court rejects Defendant Hudson's objections, agrees her motion was untimely, and confirms the Magistrate Judge's decision not to consider it. But in any event, the Court concludes the United States has established jurisdiction, standing, and venue: federal courts have jurisdiction over "of all offenses against the laws of the United States," *see* 18 U.S.C. § 3231; the United States prosecutes violations of those crimes; and each count of the second superseding indictment alleges both venue in the Northern District of Georgia and an interstate nexus. The Court has also reviewed each charge in the indictment and concludes each properly tracks the applicable criminal statute to state adequately a criminal offense (including the interstate nature of the offense) and to notify Defendant Hudson of the crimes charged. *United States v. McNair*, 605 F.3d 1152, 1186 (11th Cir. 2010) ("It is well established in this Circuit that an indictment is sufficient if it tracks the language of the statute and provides a statement of facts that gives notice of the offense to the accused."). And nothing prevents the United States from asking leading questions before a grand jury.

In recommending dismissal without prejudice, the Magistrate Judge explained that the proffer agreement between Defendant Hudson and the United States "included a provision providing for waiver of indictment in anticipation of a guilty plea." (2023 Case, Dkt. 332 at 2.) Defendant Hudson objects to that statement, arguing the proffer agreement did not require her to plead guilty and thus the Magistrate Judge erred in relying on the agreement "as a factual basis supporting the [United States's] timeline and rationale." (Dkt. 360 at 12.) In explaining the facts, the Magistrate Judge relied, not just on the written proffer agreement (which included no obligation to plead guilty), but also on the United States's representations at Defendant Hudson's June 27, 2023 arraignment. (*Id.*) Specifically, the Assistant United States Attorney explained at the arraignment that Defendant Hudson had agreed to plead guilty to the criminal information but her plea was delayed when she applied to ATL Court. (2023 Case, Dkt. 133 at 13.) The Magistrate Judge accurately summarized the facts and applied those facts in considering Defendant Hudson's claim under the Speedy Trial Act. It makes not difference that the agreement Defendant Hudson would plead guilty was not included in the proffer agreement. This Court

agrees with the Magistrate Judge's conclusion that the 2022 case should be dismissed under the Speedy Trial Act without prejudice.

Defendant Hudson also objects to the Magistrate Judge's failure to consider the *Barker* factors and argues a proper consideration of those factors would warrant dismissal with prejudice. (2023 Case Dkt. 360 at 16-18; 20.) Having reviewed the issue *de novo*, the Court concludes the pretrial delay in the 2022 case did not violate Defendant's Sixth Amendment right to a speedy trial. Since the pretrial delay exceeded one year, the Court presumes Defendant Hudson suffered prejudice. *Doggett v. United States*, 505 U.S. 647, 671 n.1 (1992). But that "delay" factor does not really weigh so heavily in this case because the United States notified Defendant Hudson at her arraignment on the indictment that it would not be pursuing (and would be dismissing) the criminal information. That occurred on June 27, 2023—well before the one year mark from filing of the information. (2023 Case, Dkt. 133 at 14-16.) So while the pretrial delay "technically" exceeded one year, there was never any chance Defendant Hudson would face trial in that case. Indeed, the United States agreed to dismiss the 2022 case on that very day if Defendant Hudson agreed it would be without prejudice. The Court also

agrees with the Magistrate Judge that the United States has established "affirmative justification" for the delay prior to the United States's announcement: Defendant Hudson's efforts to resolve the 2022 case through ATL Court and her subsequent arrest on the new fraud charges. And much of the delay in resolving whether dismissal would be with or without prejudice arose from Defendant Hudson's own conduct, including primarily the scorched earth way she has chosen to litigate these cases. She has a right to file the motions she has filed but the more she does the longer the delay.  And the Court can find no actual prejudice that Defendant Hudson suffered from the delay, particularly in the light of the fact that she was being detained and prosecuted on far more serious charges in the 2023 case.  Despite any presumption of prejudice, the Court concludes this factor weighs against the finding of a constitutional violation.

In assessing the second *Barker* factor (the reason for the delay), the Eleventh Circuit has explained:

> (1) [A] deliberate attempt to delay the trial in order to hamper the defense is weighted heavily against the government; (2) a more neutral reason such as negligence or overcrowded courts is weighted less heavily against the government but nevertheless is considered since the ultimate responsibility for such circumstances must rest with the government rather

than the defendant; and (3) a valid reason, such as a missing witness, serves to justify appropriate delay.

*Villarreal*, 613 F.3d at 1351. "[T]he burden is on the prosecution to explain the cause of the pre-trial delay." *United States v. Ingram*, 446 F.3d 1332, 1337 (11th Cir. 2006). As stated above, much of the delay in that case arose from Defendant Hudson's own conduct. The Court also echoes the Magistrate Judge's conclusion that no evidence suggest the United States delayed trail on the 2022 information because of any bad faith, ill will, or effort to obtain any tactical advantage. Again, the United States announced in June 2023 that it would be dismissing that case.[3]

Defendant Hudson contends that the United States's "deliberate or negligent conduct in delaying the production of seizure warrants and discovery" in the 2023 case causes this *Barker* factor to weigh in her

---

[3] In her objections, Defendant Hudson claims the United States waited 575 days to respond to her motion to dismiss. (2023 Case Dkt. 360 at 17.) She appears to be comparing the date her counsel filed the initial motions and the United States's response to her amended motion. But again, none of this delay really matters as to dismissal of the 2022 information since the United States long before announced it would be dismissing that charge in lieu of the indictment. The delay resulted from consideration of the prejudice issue alone and—as far as the Court can tell—had no impact on Defendant Hudson in the light of her indictment and detention arising from the indictment.

14

favor. (2023 Case Dkt. 360 at 16-17.)[4]  As far as the Court can tell, Defendant Hudson raised no argument about this in her motion to dismiss the criminal information.  So the Court refuses to consider it. Even if it did, that would not matter.  How the United States responded to discovery in the 2023 case arising from the indictment has no bearing on the United States having failed to comply with the Speedy Trial Act regarding the 2022 information.  The second *Barker* factor weighs in the United States's favor.

The third factor requires a court to examine whether and how a defendant asserts his or her speedy-trial right, including the "frequency and force" of his or her assertion.  *Barker*, 407 U.S. at 529, 531.  "A defendant's assertion of his [or her] speedy trial right is often 'entitled to strong evidentiary weight in determining whether a defendant is being deprived of the right.'"  *Villarreal*, 613 F.3d at 1353–54 (quoting *Barker*, 407 U.S. at 531).  Indeed, "a timely demand for a speedy trial often supports an inference that the defendant was not at fault for the delay and that the delay prejudiced the defendant."  *Id.*  Nevertheless, the

---

[4] The Court discusses Defendant Hudson's argument about production of seizure warrants in greater detail below in relation to her objections to the Magistrate Judge's recommendation regarding the 2023 indictment.

weight a court attaches to a defendant's assertion of his speedy trial right depends on the circumstances of the defendant's demand. *Id.; see also Barker*, 407 U.S. at 528–29 (explaining court may "attach a different weight" to different circumstances, such as frequent and forceful demands as compared to a "purely pro forma objection").

This factor does not weigh in Defendant Hudson's favor—at least not much—for two reasons. First, she asserted her right to a speedy trial just seven days before the United States announced it would dismiss the information. (*Compare* 2022 Case Dkt. 31 (Motion to Dismiss for Speedy Trial Violation file June 20, 2023) *and* 2023 Case Dkt. 133 at 14-16 (announcement of intent to dismiss on June 27, 2023).) Second, while Defendant Hudson argues in her objections to the Report & Recommendation that she has "repeatedly asserted [this] right," (2023 Case Dkt. 360 at 16-17), her assertion of it since June 2023 has merely been to seek dismissal with prejudice with no possibility of a trial. And, for much of that time before that—about 119 days from her release on bond on September 29, 2022 through her subsequent arrest on January 27, 2023—the parties agreed Defendant would plead guilty to the information. So she was not asserting her right then.

16

Because the first three factors do not weigh heavily against the United States, Defendant Hudson must show the fourth factor—actual prejudice. See *United States v. Ogiekpolor*, 122 F.4th 1296, 1305 (11th Cir. 2024) ("In this circuit, a defendant generally must show actual prejudice unless the first three factors in *Barker* all weigh heavily against the government."); *Vargas*, 97 F.4th at 1289. This is "the most difficult [factor] to evaluate qualitatively and quantitatively." *United States v. Greer*, 655 F.2d 51, 53 (5th Cir. 1981). To do so, the Court must "assess the prejudice suffered by the defendant in light of the three interests of the defendant the speedy trial right was intended to protect: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Villarreal*, 613 F.3d at 1355. "Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id*. "[M]ere conclusory allegations are insufficient to establish actual prejudice." *Machado*, 886 F.3d at 1082.

Defendant Hudson comes nowhere near meeting her burden. She can show no oppressive incarceration because of her detention in the 2022

case since she was also detained in the 2023 case. She cannot show anxiety as she has known since June 2023 that she would not face trial on this case. And she has not showed any possible impairment of her defense.

In her objections, Defendant Hudson claims she has shown prejudice and cites an Affidavit of Prejudice that she previously filed. (2023 Case, Dkt. 360 at 17 (citing Case 2023, Dkt. 297).) But Defendant Hudson did not file that "Affidavit of Prejudice" as part of her motion to dismiss but rather filed it as a standalone document. Nothing on the face of the document indicates she intended it to be part of the motion to dismiss at issue. Indeed, by way of relief, she sought "judgment of default" against the United States, not dismissal with prejudice under the Speedy Trial Act. (2023 Case, Dkt. 297 at 16.) So, again, the Magistrate Judge was not required to consider it and neither is this Court. Second, Defendant Hudson does not specify any actual prejudice in that affidavit. She avers that the United States violated the Speedy Trial Act by not timely bringing her to trial on the information but does not explain how that impacted her. He allegations in that "Affidavit" that she has been wrongfully detained or denied medical care do not show

prejudice for the reason already explained—those things occurred because of her detention in the 2023 case (at least by April 2023) rather than because of the lack of a speedy trial in the 2022 case.[5] And the Court has already considered these issue in various other motions she has filed and determined her detention is appropriate and that she is not being denied any necessary medical care.

---

[5] Defendant Hudson filed reply briefs in support of her motions to dismiss that exceeded this Court's 15-page limit. (2023 Case, Dkt. 314, 2022 Case, Dkt. 195.) She now objects to the Magistrate Judge's decision to consider only the first 15 pages. (2023 Case Dkt. 360 at 19.) The Court overrules this objection as the Magistrate Judge properly applied this Court's Local Rules. *See* LR7.1(D), NDGa (15-page limit for reply briefs); LCrR 12, NDGa (adopting page limitations from civil rules). And even considering the additional 15 or so pages would not change anything. In the additional pages, Defendant Hudson mostly reiterates the arguments she has already made without truly responding to the United States's arguments. She adds a bit of meat to her prejudice argument—saying she has been prejudiced because her detention has prevented her from properly preparing for trial because she cannot access certain documents while incarcerated, has been denied medical care, and misses her children. The Court notes—yet again—that her detention since April 2023 arose from her indictment in the 2023 case and does not constitute prejudice from the denial of her speedy trial in the 2022 case. Regarding the 2023 case, the Magistrate Judge and this Court have previously addressed her access to materials she needs to represent herself and continue to do so. Indeed, the Court previously appointed standby counsel to assist her, ordered the detention facility to provide her more access to legal resources, and allowed Defendant Hudson access to a computer so she could access the documents she claims were (sometimes) inaccessible. (2023 Case, Dkt. 339.) She also offers no proof that she has suffered medically from detention.

For these reasons, the Court adopts the Magistrate Judge's conclusion that the 2022 information should be dismissed under the Speedy Trial Act without prejudice and further concludes no Sixth Amendment violation arose from the pretrial delay in that case. The Court thus **ADOPTS** the Magistrate Judge's Recommendation and **DENIES** Defendant Hudson's motion to dismiss the 2022 information with prejudice for violation of her speedy trial rights (2022 Case, Dkts. 31, 60). Consistent with the United Stats's request, the Court **DISSMISSES** that case without prejudice.

## B. Denial of Motion to Dismiss the First Superseding Indictment

The Magistrate Judge also says this Court should deny Defendant Hudson's motion to dismiss the first superseding indictment because the Speedy Trial clock has not yet expired. In reaching this conclusion, the Magistrate Judge noted various events that toll the running of the statutory speedy trial clock, including delay resulting from pretrial motions filed by a defendant. (2023 Case, Dkt. 332 at 15.) The Magistrate Judge summarized the voluminous and numerous motions Defendant Hudson filed throughout this case, laid out her calculation of

the non-excludable delay, and concluded that "only seventeen non-excludable days have run since [Defendant's] indictment." (*Id.* at 24.)

As part of her analysis, the Magistrate Judge noted law enforcement arrested Defendant Hudson in early 2023 because she had violated the terms of her bond in the 2022 case. (2023 Case, Dkt. 332 at 3.) She explained, the United States obtained an indictment in the 2023 case while she was detained in the older case. (*Id.*) So, the Magistrate Judge concluded there was no preindictment delay. And even if there were, to succeed on her constitutional claim (presumably under the Fifth Amendment which protects against unreasonable preindictment delay, *see United States v. Marshall,* 360 F. App'x 24 (11th Cir. 2010)), Defendant Hudson would have to show actual prejudice to her defense from the delay and "that the delay resulted from a deliberate design by the government to gain a tactical advantage." *See United States v. Marshall*, 360 F. App'x 24, 25 (11th Cir. 2010); *United States v. Young*, 906 F.2d 615, 620 (11th Cir.1990).[6]  The Magistrate Judge concluded Defendant

---

[6] The Court cites several unpublished, nonbinding cases because it finds them instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

Hudson had shown no actual prejudice whatsoever. She also noted Defendant Hudson's "extensive motions practice [was] the primary cause of the delay in commencement of trial." (2023 Case, Dkt. 332 at 26-26.) And finally, the Magistrate Judge concluded no evidence suggests the United States acted with any nefarious intent. (*Id.* at 27.)

Defendant Hudson starts her objections to the Report & Recommendation with a lengthy discussion of the United States's late production of "seizure warrants" as part of the discovery process in the 2023 case. (2023 Case, Dkt. 360 at 4-7.) She says "the two-year gap between seizure and production of any purported warrant demonstrates gross Government negligence and intentional delay, thereby prejudicing [her] ability to prepare a defense or maintain financial stability." (*Id.* at 5.) She argues the United States delayed its production of the seizure warrants "in an attempt to coerce her into accepting a plea offer by attempting to establish guilt based on the COERCED proffer session" and that the Magistrate Judge "overlooked the fact that" the United States's failure to produce timely the seizure warrants violated her due process and speedy trial rights. (*Id.* at 6.)

22

This objection is misplaced. Defendant Hudson did not raise any argument about the seizure warrants in her motions to dismiss here. And the Magistrate Judge did not discuss the issue in her Report & Recommendation. As far as the Court can tell, Defendant Hudson is referring to a prior Report & Recommendation the Magistrate Judge issued earlier in this case to address discovery motions Defendant Hudson filed seeking (among other things) dismissal of all charges. (2023 Case, Dkt. 260.) In that Report & Recommendation, the Magistrate Judge summarized the discovery the United States produced and its efforts to respond to Defendant Hudson's various requests for additional materials. As one part of a much larger discussion, the Magistrate Judge concluded the United States—inadvertently—failed to produce "seizure warrants" related to several bank accounts until December 2024. (*Id.* at 45.) Based on information the United States provided at a pretrial conference, the Magistrate Judge rejected Defendant Hudson's suggestion the United States had acted in "bad faith" and concluded Defendant Hudson "failed to show that the [United States] intentionally delayed the production of the warrants or that this delay has prejudiced her defense in this case." (*Id.* at 46.) On the issue of prejudice, the

Magistrate Judge specifically noted the United States had already rectified its error and there was no risk of prejudice to Defendant Hudson as the parties were still briefing various motions to dismiss and no trial date had been set. (*Id.*)

The Court previously adopted that Report & Recommendation when Defendant Hudson failed to timely file any objections despite a thirty-day extension of the initial deadline. (2023 Case, Dkt. 277.) The Court then denied Defendant Hudson's motion for reconsideration (filed after adoption the Report & Recommendation) asking the Court to give her another extension of time to file objections. (2023 Case, Dkt. 291.) She cannot bring that issue back into this case as an objection to the current Report & Recommendation that had nothing to do with seizure warrants. And even if she could, the Court (having reviewed the evidence before the Magistrate Judge at the time) agrees with the Magistrate Judge's determination in the prior Report & Recommendation that Defendant Hudson failed to show prejudice from delay in receiving the seizure warrants. Her conclusory assertions of prejudice are not enough.

Defendant Hudson next argues the Magistrate Judge should have treated the 2022 case and 2023 case as "linked for speedy trial

computation purposes" such that "any time attributable to the [United States's] conduct that delayed treatment of the [2022 case] must be counted for the same conduct as the [2023 case]." (2023 Case, Dkt. 360 at 11.) No legal authority allows (let alone requires) this. The two cases are separate prosecutions and require separate calculations. It would make no sense, for example, to count delay in late 2022 from Defendant Hudson's efforts to seek ATL Court resolution of the criminal information against the speedy trial clock for the indictment the United States obtained in April 2023. The Court rejects this objection.

Relatedly, Defendant Hudson objects to the Magistrate Judge's factual finding that the United States arrested Defendant Hudson in January 27, 2023 for violating the terms of her bond in the 2022 case. (2023 Case, Dkt. 360at 20.) She contends the Magistrate Judge should have held an evidentiary hearing before concluding her arrest did not trigger the thirty days in which the United States was required to obtain an indictment under the Speedy Trial Act in the 2023 case. (*Id.*) The Court rejects this objection. No evidentiary hearing was needed. That law enforcement arrested Defendant Hudson for violating her bond conditions is beyond dispute—she was arrested on the United States's

motion to revoke bond.  (2022 Case, Dkt. 6, 11.)  So her arrest in the 2022 case did not trigger a clock for her indictment in the 2023 case.

Defendant Hudson also argues the Magistrate Judge "improperly accepted" the United States's calculations under the Speedy Trial Act that only 17 days of non-excludable time had run without requiring the United States to prove that assertion.  (*Id.* at 13.)  Defendant Hudson does not offer a different calculation or argue the Magistrate Judge made some error—merely that the judge should not have accepted the United States's calculation.  But the United States showed its math in its response brief, and the Magistrate Judge adopted that calculation.  (2023 Case, Dkts. 231 at 6-7; 332 at 23-24.)  That calculation shows that, since her arraignment on April 27, 2023, only 17 days have run given the number of continuances Defendant Hudson sought and the motions she filed.  The Court sees no error with the Magistrate Judge's calculation and rejects Defendant Hudson's contention that the Magistrate Judge merely accepted the United States's math.

In a similar objection, Defendant Hudson contends the Magistrate Judge failed "to account for the [United States's] discovery failures" in its speedy trial calculations.  (2023 Case, Dkt. 360 at 14.)  As her only

explanation, Defendant Hudson claims the Report & Recommendation "acknowledges that the [United States] failed to comply with a Court discovery order and did not provide discovery until 212 days after the filing of the Criminal Information—a delay the R&R recounts but then minimizes." (2023 Case, Dkt. 360 at 14-15.) She also references the late disclosure of the seizure warrants discussed above. (*Id.*) The Court is a bit confused by this objection and believes Defendant Hudson is again referring to the prior Report & Recommendation to which she failed to properly object. But at any rate, she has not shown how the United States's late disclosure delayed the trial of this case, violated the Speedy Trial Act, or deprived her of her constitutional right to a speedy trial. Her conclusory allegation that it did is not enough.[7]

For these reasons, the Court thus **ADOPTS** the Magistrate Judge's Recommendation and **DENIES** Defendant Hudson's motion to dismiss the 2023 superseding indictment (2023 Case, Dkts. 22, 141).

---

[7] Defendant Hudson also contends the Magistrate Judge erred in relying on non-binding district court cases to justify her tolling analysis. (2023 Case, Dkt. 360 at 18.) The Magistrate Judge cited those cases as persuasive, and Defendant Hudson's efforts to distinguish them do not indicate any error in the Magistrate Judge's analysis.

### C.    Outstanding Motions and Housekeeping

Since the Court dismisses the 2022 case without prejudice, it denies all outstanding motions in that case as moot.  The 2023 case, however, has several outstanding motions that the Court addresses.

### a.    Docket Entry 192

As already explained, Magistrate Judge Vineyard revoked Defendant Hudson's bond in early 2023 after concluding the United States presented probable cause to believe she had committed another federal offense while on bond in that case.  (2022 Case, Dkt. 13.)  In support of his decision, the Magistrate Judge explained:

> there is a rebuttable presumption that no combination of conditions will assure that Hudson will not pose a danger to the safety of the community by continuing to engage in criminal conduct, and Hudson has not rebutted the presumption.  Moreover, Hudson's conduct demonstrates that she is not likely to abide by any conditions of release given the brazen nature of the new criminal conduct described in the government's motion for which evidence was presented at the hearing to establish probable cause that she committed these new offenses while on bond.

(*Id.* at 2.)  Judge Batten denied her appeal of that order, concluding "the Magistrate Judge's detention analysis correctly took into account the nature of her bond violation and the likelihood of further issues with

compliance and her [arguments on appeal] does not change that analysis given the brazen nature of the alleged offense." (2022 Case, Dkt. 28.)

After obtaining the initial indictment in this case, the United States moved to detain Defendant Hudson pending trial and Magistrate Judge Vineyard granted that order. (2023 Case, Dkts. 10, 11.) In doing so, the Magistrate Judge concluded the United States had showed by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of any person or the community if Defendant Hudson were released on bond. (2023 Case, Dkt. 11 at 2.) As part of this, the Magistrate Judge noted the weight of the evidence against Defendant Hudson is strong, she faces a lengthy period of incarceration if convicted, she used aliases and false documents, and she "engaged in new criminal conduct while in bond [in the 2022 case] and the brazen nature of the conduct coupled with her pattern of fraudulent conduct demonstrates that she poses a danger of on-going criminal conduct." (*Id.* 2-3.) Defendant Hudson appealed that decision, and Judge Batten denied her appeal for same reasons he denied her appeal in the 2022 case. (2023 Case, Dkts. 60, 61.)

Defendant filed a "Motion for Bond and Appeal of Detention Order, arguing a change in her "mental and physical health" and a new "housing option" warranted bond. (2023 Case, Dkt. 82.) Magistrate Judge Cannon (who had not been involved in the prior detention orders) held a hearing and entered an order concluding Defendant Hudson was receiving adequate medical care while incarcerated and that—in the light of her conduct while on release previously—no combination of conditions would reasonably assure her appearance at trial or the safety of the community if she were released pending trial. (2023 Case, Dkt. 94 at 2.) About a year later, Defendant Hudson appealed that decision, arguing the Magistrate Judge lacked jurisdiction to hear that motion and conditions that could assure her appearance and the safety of the community existed. (2023 Case, Dkt. 192 at 17-18.)

It is unclear why that motion remains on the docket as this Court has already affirmed the Magistrate Judge's detention decision. (2023 Case, Dkts. 60, 61.) But, for clarity, the Court rejects both arguments. As to the former, while Defendant entitled her motion to the Magistrate Judge as an "appeal," it was a request for bond due to changes in her pretrial circumstances. The Magistrate Judge properly considered that

30

motion, with Defendant Hudson retaining the right to appeal that decision to the district court judge (as she has done). As to the latter, the Court agrees with Judge Batten's prior conclusions in this case and in the 2022 case, Magistrate Judge Vineyard's conclusions in this case and the 2022 case, and Magistrate Judge Canon's conclusion in this case: the United States has presented evidence that Defendant committed "brazen" criminal activity while on bond—the forgery of Judge Batten's signature—and that this conduct demonstrates no combination of conditions could assure the safety of the community if Defendant were released. The Court thus **DENIES** Defendant's Motion to Appeal Detention Order (2023 Case, Dkt. 192).[8]

---

[8] Defendant also filed a "Motion for Expedited Review of Appeal of Detention Order." (2023 Case, Dkt. 201.) She filed this on the same day she filed a Notice of Appeal to the Eleventh Circuit of (among other things) this Court's order denying her appeal from the Magistrate Judge's initial detention order and the Magistrate Judge's Report & Recommendation recommending the denial of a prior motion to dismiss under the Speedy Trial Act. (2023 Case, Dkt. 198.) In the Motion for Expedited Review, she also asked the Court to "grant expedited Review of the Motion to appeal District Court Detention Order." (2023 Case, Dkt. 201 at 3.) The Court thus believes that motion was intended for consideration by the Eleventh Circuit. Regardless, the Court **DENIES** that motion (2023 Case, Dkt. 201) as moot.

### b. Docket Entries 197 & 218

Defendant also filed an "Emergency Motion for Immediate Release from Custody," arguing she should be released because the United States had violated the Speedy Trial Act. (2023 Case, Dkt. 122.) The Magistrate Judge issued a Report & Recommendation, saying (among other things) that the Court should deny her motion. (2023 Case, Dkt. 184.) Defendant filed her objections to the Report & Recommendation. (2023 Case, Dkt. 190.) She then filed a "Motion for Expedited Review of Emergency Motion for Immediate Release, Non-Final Report & Recommendation and Objections," saying the Magistrate Judge failed to rule on her motion with a 30-day period and arguing medical reasons also required her release. (2023 Case, Dkt. 197.) About a month later, she filed a "Motion Requesting Intervention, Review and Issue and Order by District Judge," asking the Court to "issue an immediate order" on her "Emergency Motion for Immediate Release from Custody." (2023 Case, Dkt. 218 at 16.) The Court adopted that Report & Recommendation (2023 Case, Dkt. 236) but did not address her interim motions for expedited review. In the light of the Court's order adopting the Report & Recommendation, the Court **DENIES** as moot her "Motion for Expedited Review of Emergency

Motion for Immediate Release, Non-Final Report & Recommendation and Objections" (2023 Case, Dkt. 197) and "Motion Requesting Intervention, Review and Issue and Order by District Judge" (2023 Case, Dkt. 218) as moot.

### c. Docket Entry 193

In June 2023, Defendant Hudson filed two motions to suppress the search and seizure of items recovered from her car and requested an evidentiary hearing on the matter. (2023 Case, Dkts. 21, 27.) She also asked for additional time to review any warrants the United States may have obtained as part of the searches. (2023 Case, Dkt. 27 at 3.) After a superseding indictment, Defendant Hudson moved to extend the deadline for pretrial motions—saying she needed more time to review the discovery—and agreeing the time should be excluded from the Speedy Trial Act. (2023 Case, Dkt. 47.) The Magistrate Judge granted that request. (2023 Case, Dkt. 48.) Defendant Hudson requested and the Magistrate Judge granted several similar extensions. (2023 Case, Dkts. 56, 58, 63, 70, 73, 80, 81, 95, 97, 103, 104, 107, 108.) When Defendant Hudson fired her lawyer and decided to represent herself, the Court extended the date for pretrial orders. (2023 Case, Dkt. 123.) Defendant

33

Hudson filed several other motions.  (2023 Case, Dkts. 141, 143, 145, 146, 151, 160, 161.)   In late October 2024, she filed another motion to suppress.  (2023 Case, Dkt. 180.)  At a pretrial conference on October 31, 2024 to address the outstanding motions, the Magistrate Judge explained she would set a hearing on Defendant Hudson's motion to suppress for January 25, 2025.  (2023 Case, Dkts. 187; 195 at 34.)  The Magistrate Judge excluded the delay from that date until the hearing pursuant to 18 U.S.C. 3161(h)(7)(A) and (B)(iv).  (*Id.*)

Defendant Hudson filed a "Motion to Object to Magistrate Judge Cannon Order Document 187 in Case 1:23-cr-131 and Document 101 in Case 1:22-cr-362" in which she objected to the exclusion of that time, saying the ends of justice did not warrant exclusion of the time because she had filed several other motions to dismiss for violation of the Speedy Trial Act and the Court had not yet ruled on them.  (2023 Case, Dkt. 193.) She ended her motion arguing the Magistrate Judge had not previously excluded any delay, that she has sought prompt resolution of her matters, and that, "[i]f the Court ha[d] maintained the prompt disposition of the Motions within this case, the current delays would not be excessive."  (*Id.* at 7.)   Whether or not the Magistrate Judge excluded other time is

irrelevant to the appropriateness of that exclusion here. And, having reviewed the docket in both cases, the Court rejects Defendant Hudson's suggestion she has sought prompt resolution of these matters (particularly in the light of the many continuances she sought), her argument that the Court has not maintained proper disposition of her motions, and her assertion that the Court has caused excessive delays. Defendant Hudson is a prolific filer and—while she has the right to file motions—she cannot deny the delay they create.

But the issue here is the appropriateness of the Magistrate Judge's decision to exclude time between the October 31 pretrial conference and the motion to suppress hearing (schedule at that time for January 22, 2025).[9] The Court agrees the Magistrate Judge properly excluded that time, finding the ends of justice served by the delay outweighed the best interests of the public and Defendant Hudson in a (more) speedy trial given the failure to grant the extension would deny Defendant Hudson and the United States time to prepare for the hearing—particularly because the United States had not yet responded to a motion to suppress

---

[9] The Court notes the hearing occurred on February 12, 2025. (2023 Case, Dkt. 242.)

Defendant Hudson filed just eight days before the pretrial conference. (2023 Case, Dkt. 180.)  The Court thus **DENIES** Defendant Hudson's Motion to Object (2023 Case, Dkt. 193).

### d. Docket Entry 250

Defendant Hudson also filed a "Motion for Access to Electronically File Documents Within Case and Exemption for Pacer's Access Fees," asking the Court to order that she be given the ability to electronically file documents while detained and that she be able to do so without paying PACER fees because (according to her) the Clerk of Court was not docketing items she filed by mail.  (2023 Case, Dkt. 232.)  The Magistrate Judge denied that motion at a hearing on February 12, 2025, finding she had chosen to represent herself and thus accepted the difficulties of doing so while detained.  (2023 Case, Dkt. 253 at 44.)  Defendant Hudson filed a "Motion to Object and Vacate Magistrate Judge's Order Denying Access to Electronically File Documents Within Case and Exemption From Pacer's Access Fees."  (2023 Case, Dkt. 250.)

The Court agrees with the Magistrate Judge's conclusion that the relief requested is inappropriate.  As part of this, the Court notes Defendant Hudson has filed a seemingly endless number of motions in

36

this case and the 2022 case, thus undermining any contention that she needs electronic access to represent herself in this matter. Any confusion within the Clerk's Office likely arises from the "carpet bombing" approach Defendant has instituted. (2023 Case, Dkt. 253 at 6.) Indeed, the Court itself has difficulty tracking Defendant Hudson's various motions. To say the least, the Court rejects Defendant Hudson's assertion that the Clerk of Court is not properly processing her filings. The Court **DENIES** Defendant Hudson's Motion to Object and Vacate Magistrate Judge's Order Denying Access to Electronically File Documents Within Case and Exemption From Pacer's Access Fees (2023 Case, Dkt. 250).

### e. Docket Entry 257

To appeal this Court's detention order to the Eleventh Circuit, Defendant Hudson moved (several times) to appeal in forma pauperis. (2023 Case, Dkts. 221, 226, 227, 252.) Defendant Hudson filed a "Motion for Expedited Review of Motion to Proceed In Forma Pauperis," asking the Court to address those issues more quickly. (2023 Case, Dkt. 257.) The Court did so, granting one of her motions and denying the other just days later. (2023 Case, Dkt. 263.) The Court now **DENIES** her Motion

for Expedited Review of Motion to Proceed In Forma Pauperis (2023 Case, Dkt. 257) as moot.

### f. Docket Enry 293

Defendant Hudson filed another motion seeking pretrial release, this one entitled "Ex Parte Emergency Motion for Immediate Judicial Intervention by District Judge" and arguing (1) she has been detained with "no written findings on the record as required" thus suggesting her "current detention is for preventative purposes" and (2) her on-going detention violates due process. (2023 Case, Dkt. 293.) Defendant Hudson's assertion that she has been detained without written findings is incorrect. As already explained, Magistrate Judge Vineyard determined—at the very start of this case—that Defendant Hudson's "brazen" actions in forging a federal judge's signature as part of a fraudulent transaction while on bond indicates no conditions would reasonably assure the safety of the community if Defendant Hudson were released. (2023 Case, Dkt. 11 at 2-3.) This Court echoed that conclusion. (2023 Case, Dkt. 61.) In doing so, it reaffirmed the same conclusion from when it denied Defendant's appeal of the order revoking her bond in the 2022 case. (*Id.*)

As part of this motion, Defendant Hudson also contends the Magistrate Judge provided no written findings for denying two other motions for release. (2023 Case, Dkt. 293 at 5 n.3 (citing Docket Entries 251 and 256).) In the first motion, she sought release either with electronic monitoring or to a halfway house because of crowding at the detention facility "[due] to the increase in ICE arrests throughout the country" and so she could conduct legal research more effectively. (2023 Case, Dkt. 251 at 2.) She filed the second motion two weeks later to urge the Court to consider her prior motion more quickly because she was facing mental anguish, medical issues, and family difficulties from her on-going detention—all issues the Court had addressed before. (2023 Case, Dkt. 256 at 2-3.) The Magistrate Judge considered those motions at a hearing on May 8, 2025. (2023 Case, Dkt. 274.) The United States argued the Court had "thoroughly vetted" the bond issue in the many prior orders and nothing had changed to dispel the conclusion that no conditions of release could protect the public if Defendant Hudson were granted bond. (2023 Case, Dkt. 288 at 29.) The Magistrate denied the motions. (*Id.* at 26.) In doing so, she specifically stated that alleged crowding at the jail and the need to more easily conduct research did not

warrant release. (*Id.*) She also reminded Defendant Hudson that she was being detained for having violated the conditions of her bond in the 2022 case. That was more than enough for the Magistrate Judge to explain the basis for detention. She was not required to go through a full recounting of the issue that all the judges involved in this case have explained several times before.[10]

The Court also rejects Defendant Hudson's due process argument. The Bail Reform Act provides a defendant lots of protection. The Court is required to have a hearing, defendants have a right to counsel at that hearing, the right to testify on their own behalf, the right to present information by proffer or otherwise, and he right to cross-examine

---

[10] Defendant Hudson also suggests the Magistrate Judge lacked jurisdiction to consider her motions for release. (2023 Case, Dkt. 293 at 6.) Perhaps she means she directed her motions to the District Court Judge rather than the Magistrate Judge. She did not raise that issue during the May 8, 2025 hearing, however. The Court also rejects the notion that the Magistrate Judge could not, in the first instance, decide eligibility for bond. *See* 18 U.S.C. § 3143(f) (permitting judicial officer who decides detention to reopen hearing and consider new facts that have "material bearing" on detention decision). Defendant Hudson has not appealed that specific decision to this Court—at least not since reassignment of this case to the undersigned. But, having reviewed the record in this case and the 2022 case (including the mountain of Defendant Hudson's filings) the Court agrees with the conclusion of the three judges who have previously considered the issue: no conditions would protect the public if Defendant Hudson were released on bond.

witnesses who appear at the hearing.  18 U.S.C. § 3142(f).  The statute provides the factors a Magistrate Judge must considering in deciding whether to order detention, including the nature and the circumstances of the charges, the weight of the evidence, the history and characteristics of the defendant, and the danger to the community.  *Id.* at § 3142(g).  The United States must prove the need for detention by clear and convincing evidence.  *Id.* at § 3142(f).  The Magistrate Judge must provide written findings of fact and a "written statement of the reason for the detention. *Id.*at § 3142(i).  And a defendant has the right to "prompt" review of a detention order by the district court.  *Id.* at 3145(c).  The "extensive safeguards" are more than enough to satisfy due process—particularly here where Defendant Hudson has engaged at each step of the process. *United States v.* Salerno, 481 U.S. 739, 751-52 (1987).

The Court **DENIES** Defendant Hudson's Ex Parte Emergency Motion for Immediate Judicial Intervention by District Judge (2023 Case, Dkt. 293).

### g. Docket Entries 320 & 328

Defendant Hudson filed a Motion for Reconsideration and Vacatur of Prior Orders Due to Judicial Bias, Material Witness Conflict, and

Violation of Defendant's Right to be Heard, asking this Court to vacate several orders the judge previously assigned to this case entered before his retirement. (2023 Case, Dkt. 320.) She claims that judge (whose signature she allegedly forged) was biased against her. As evidence of this bias, she cites his order adopting a Report & Recommendation without the benefit of her objections that she claims the United States Postal Service delayed. (*Id.* at 3.) She further claims she sent the Clerk of Court several other pleadings but the Court failed to enter them. (*Id.*) From this, she surmises that the Court "intentionally delayed resolution of these issues" until that judge could retire and that "there appears to be continued violations based on the working relationship with" that judge. (*Id.* at 4.) She says "[t]he withholding of filings further proves that [she] has not been before a neutral judge." (*Id* at 7.)

Defendant Hudson presents no evidence the Clerk's office withheld any of her pleadings, and the Court rejects any notion of a conspiracy between the Clerk's office and any judge to impact her case or deny her justice. The Court also notes that the prior judge adopted the Report & Recommendation at issue ***after*** granting Defendant Hudson one extension of the objection deadline and then denying her second request

because she had not explained the need for doing so. (2023 Case, Dkts. 267, 276.) The undersigned already reviewed that decision when it denied Defendant Hudson's Motion for Reconsideration. (2023 Case, Dkt. 291.)[11] That Defendant Hudson is now waging another attack on the same decision speaks to the great number of motions—seemingly limitless—she has filed during the pendency of this case.

The Court **DENIES** Defendant Hudson's Motion for Reconsideration and Vacatur of Prior Orders Due to Judicial Bias, Material Witness Conflict, and Violation of Defendant's Right to be Heard (2023 Case, Dkt. 320). As Defendant seems to have filed the same motion twice, the Court denies that second motion (2023 Case, Dkt. 328) as well.

---

[11] In that order (which the Court filed in both this case and in the 2022 case), the Court cited the prior judge's orders in the 2022 case. (2023 Case, Dkt. 291 at 2-4.) But they are all the same.

## IV.  Conclusion

The Court **ADOPTS** the Magistrate Judge's Non-Final Report and Recommendation (2022 Case, Dkt. 229; 2023 Case, Dkt. 332) and **DENIES** Defendant Hudson's motion to dismiss the 2022 information with prejudice for violation of her speedy trial rights (2022 Case, Dkts. 31, 60).  The Court **DISMISSES** Case No. 1:22-cr-362 without prejudice. In the light of the dismissal, the Court **DENIES AS MOOT** all outstanding motions in the 2022 case.  The Court **DENIES** Defendant's Motions to Dismiss Indictment (2023 Case, Dkts. 22, 141).  The Court **DENIES AS MOOT** Defendant's Motion to Dismiss Counts 1-20 and Motion to Sever Defendants and Counts (2023 Case, Dkts. 145, 151) in the light of the Second Superseding Indictment (2023 Case, Dkt. 341). The Court **DENIES** Defendant's other motions addressed within this Order (2023 Case, Dkts. 192, 193, 197, 201, 218, 250, 257, 293, 320, and 328) for the reasons stated herein.

**SO ORDERED** this 5th day of November, 2025.

_____

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE